AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
U.S. District Court
District of Kansas
DEC 08 2020
Clerk, U.S. District Court
By _____ Deputy Clerk

# UNITED STATES DISTRICT COURT

### for the

### District of Kansas

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

the premises and devices located at
517 Lincoln Street, Marquette, Kansas,
as further described in Attachment A

)
)
)
)
)
)

Case No. 20-M-6163-01-KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Kansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1591 | Sex Trafficking of a Minor |
| 18 U.S.C. 2251 | Production of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrew Campbell, SA, FBI
*Printed name and title*

telephonically

Sworn to before me and signed in my presence.

Date: Dec. 8, 2020

_____
*Judge's signature*

City and state:   Wichita, KS

The Honorable Kenneth G. Gale, US Magistrate Judge
*Printed name and title*

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION FOR A SEARCH WARRANT

I, Andrew Campbell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been employed by the FBI for approximately five years. I have been assigned to the Kansas City Division- Wichita Resident Agency's criminal squad, investigating violent crimes, drug trafficking crimes, child exploitation crimes, and firearms violations in the areas in and surrounding Wichita, Kansas.

2.      I make this affidavit in support of an application for a warrant to search the PREMISES known as **517 LINCOLN STREET, MARQUETTE, KANSAS,** hereinafter "RESIDENCE," further described in Attachment A, for the things described in Attachment B.

3.      This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the RESIDENCE specifically described in Attachment A of this affidavit, including any electronic devices and the content of electronic devices located therein, and any person located at the RESIDENCE (specifically including LOREN OLSON), for contraband and evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1591 and 2251, which items are more specifically described in Attachment B of this Affidavit.

4.      The statements in this affidavit are based in part on information provided by other law enforcement officers, including FBI and Wichita Police Department investigators, and on my review and investigation into this matter. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me

concerning this investigation. I have set forth only the facts that I believe are necessary to establish

probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations

of 18 U.S.C. §§ 1591 (Sex trafficking of a minor) and 2251 (Production of child pornography) are

presently located at the RESIDENCE described in Attachment A.

## PROBABLE CAUSE

5.      On or about September 29, 2020, Facebook submitted CyberTipline Report

8063329 to the National Center for Missing and Exploited Children. This report included the

content of communications between two accounts: Loren Olson (Facebook ID 100027275592200)

and an account identified as operated by a 15 year old minor.

6.      For the Loren Olson account, Facebook provided additional identifiers including:

the user's name; the user's mobile phone numbers 620-245-4897 and 620-553-2078 (both of which

Facebook listed as "verified[1]"); the user's date of birth and approximate age; and the user's most

recent login IP address (166.182.84.9 on August 12, 2020, at 1:41.08 UTC). All of these identifiers,

except for the IP address, would have been supplied by the user.

7.      For the minor's account, Facebook provided additional identifiers including: the

user's name; the user's mobile phone number (which Facebook listed as "verified"); the user's

date of birth and approximate age; and the user's most recent login IP address (the IP address

---

[1] This means the user provided Facebook the phone number, and Facebook sent a message to the user at the phone
number to which the user responded to verify or authenticate account access.

geolocated to Lindsborg, Kansas). All of these identifiers, except for the IP address, would have been supplied by the user.

8.      According to Facebook, the content captured and reported by Facebook had been reviewed by Facebook personnel. Facebook's report showed messages, starting on May 7, 2020, wherein Loren Olson begins his side of communication asking, "Are you ready to fuck again." Loren Olson goes on to say, "Tomorrow sometime I want to take my 2 pictures of you. One of you only and the other with you and I fucking each other."

9.      Facebook's reported communications jump to July 24, 2020, at which point Loren Olson wrote, "You are telling me now that you do not want to have sex with me anymore, so if that's how you truly feel I will never ask you again to do it with me." The following day, on July 25, 2020, the communications show Loren Olson stating "I want to fuck your pussy now."

10.     Facebook's reported communications jump to July 27, 2020, at which point Loren Olson stated "I guess that you do not want to have any more sex with me right." The minor responded, "I do but I don't know when." Loren Olson responded, "Well when you make up your mind please let me know, I guess that you do not want any money too." The minor responded, "I do want money it is just it seems like all you want me to do is have sex with you then you take pictures of my body and then give me money I feel like I am your little Whore." Loren Olson replied, "Sorry that you feel that way now because when you and I made Love to each other bodies it knows that it right because your pussy and my dick Loves each other now."

3

11.     FBI issued subpoenas to Facebook for more recent account information for both of the above accounts. In response, Facebook provided additional and more recent IP address information.

12.     FBI issued subpoenas to the providers of the associated IP addresses. The IP addresses associated with the minor's account returned to family members associated with the identified minor. A subpoena to US Cellular for an IP address associated with the Loren Olson account returned to a subscriber identified as Loren Olson at a Pretty Prairie Post Office Box. US Cellular also advised the account used an iPhone 7.

13.     On December 7, 2020, contact was made with the family of Minor Victim, a 15 year old living in Lindsborg, Kansas, requesting an interview of the minor.

14.     On December 8, 2020, the minor participated in a forensic interview at the Sedgwick County Child Advocacy Center. During this interview, Minor Victim confirmed that the reported chat reflected communications between Minor Victim and Loren Olson. Minor Victim identified Loren Olson as the boyfriend of a family member. Minor Victim confirmed the sex acts referenced in the chats occurred. Minor Victim described the sex acts occurred in an RV in a storage lot in Marquette, Kansas. Minor Victim disclosed Loren Olson provided money to engage in sex acts. Minor Victim disclosed that Loren Olson took pictures of Minor Victim's naked body and genitals with his iPhone. Minor Victim further described that he took pictures as he engaged in sex acts with Minor Victim. Minor Victim's father advised Loren Olson lived at 517 Lincoln Street, Marquette, Kansas, (**TARGET ADDRESS**) with Minor Victim's family member. When

4

presented with a Google photo (included in Attachment A), both Minor Victim and Minor Victim's father confirmed the depicted residence is the residence of Loren Olson.

15.     From training and experience, I know that iPhones are not manufactured in the state of Kansas, such that the device used by Loren Olson would have traveled in interstate commerce prior to taking pictures of Minor Victim.

## CHARACTERISTICS COMMON TO CHILD PORNOGRAPHERS

16.     From my training and experience, I know that individuals who are interested in the sexual exploitation of children will frequently use child pornography to satiate their prurient sexual desires. I know that these individuals will frequently use or access their child pornography in private, either in their own home or within secure areas of a home, including workshops and garages. If privacy is not able to be accomplished at the residence, these individuals may seek a secluded place in their car to access their child pornography – this is made easier by the use of mobile devices. While evidence of child pornography activities is often found on devices within the residential area of such individual's home, it would not be uncommon to find evidence of those same activities within the individual's car or garage/workshop.

17.     From my training and experience, I also know that individuals who are interested in the sexual exploitation of children will often seek out other likeminded individuals, for the purposes of normalizing their interest, discussing historical or planned child sexual abuse, and/or advertising the trade of child pornography.

5

18.    From my training and experience, I know that individuals who are interested in the sexual exploitation of children will frequently utilize digital devices to access the internet to seek, obtain, and traffic in child pornography, and that the device(s) used by such individuals will retain evidence and artifacts of such activity. I also know that individuals who are interested in the sexual exploitation of children will protect and retain child pornography for long periods of time. Typically, the individual will keep the device(s) close-by, in part for immediate access for sexual gratification and to maintain secure control over the contraband material.

19.    From my training and experience, I know that individuals who engage in communications with other individuals relating to the sexual exploitation of children will frequently retain information about these contacts, which can be used later to obtain access to other groups or forums relating to child pornography, or for exchanging additional child pornography.

20.    Based on the conduct reported by Facebook and the Minor Victim, and my observation of child pornographer characteristics, I believe that Loren Olson evinces the qualities associated with child pornographers, outlined above. In this instance, Loren Olson has used a social media profile to cultivate a relationship with a minor, and subsequently used a mobile device to record sex acts with a minor. The facts described above indicate Loren Olson has an active and affirmative interest in engaging in sexual acts with minors, and an active and affirmative interest in creating visual depictions of such activity. Given these apparent interests, I would expect to find evidence of additional child pornography and child erotica on devices in Loren Olson's possession. I would further expect the device(s) used by or in the possession of Loren Olson will contain

6

evidence of communications, or attempts to communicate, with other minors or individuals interested in the sexual exploitation of children, i.e., child pornographers.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

21.     As described above and in Attachment B, this application seeks permission to search for records that might be found at the RESIDENCE, as described in Attachment A, in whatever form they are found.  One form in which the records might be found is data stored on a computer's internal storage (e.g., a laptop's RAM and/or harddrives, smartphone memory, etc.) or other storage media (e.g., USB drives, DVDs/CDs, SD cards, etc.).  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

22.     *Probable cause.*  I submit that if a computer or storage medium is found on the RESIDENCE, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

  a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

  b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

7

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

23.  *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the RESIDENCE because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a

8

computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used.  For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.   A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance

9

the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

24.     *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a RESIDENCE for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the RESIDENCE, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on RESIDENCE could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can

10

take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.  Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the RESIDENCE. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.  Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

25.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

26.     Because several people share the RESIDENCE as a residence, it is possible that the RESIDENCE will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

27.     Moreover, because this affidavit demonstrates that Loren Olson appears to have used an iPhone device to commit the crimes described herein, this warrant seeks express authorization to search his person, at the RESIDENCE, for any device capable of producing, accessing or storing child pornography.

## CONCLUSION

28.     I submit that this affidavit supports probable cause to believe that the RESIDENCE located at **517 LINCOLN STREET, MARQUETTE, KANSAS**, and described in Attachment A does contain evidence of violations of 18 U.S.C. §§1591 and 2251, and therefore respectfully request that this Court issue a search warrant for the search of the premises and devices located at **517 LINCOLN STREET, MARQUETTE, KANSAS**, being more specifically described in Attachment A which incorporated by reference as if fully set forth herein, authorizing the seizure and search of the items described in Attachment B herein.

Respectfully submitted,

Andrew Campbell
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on telephonically December 8, 2020.

KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE

12